NORDBERG, INC., Appellee,

v.

SYLVESTER MATERIAL COMPANY, Appellant.

[Cite as *Nordberg, Inc. v. Sylvester Material Co.* (1995), 101 Ohio App.3d 89.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–94–134.

Decided Feb. 10, 1995.

*William McCue,* for appellee.

*Christopher Parker,* for appellant.

---

*Per Curiam.*

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, which granted summary judgment in a collection action in favor of plaintiff-appellee, Nordberg, Inc. Defendant-appellant, Sylvester Material Company, now raises the following assignments of error:

"First Assignment of Error:

"When seeking summary judgment on an account, the proponent must prove the balance owed by sworn testimony as contemplated in Civ.R. 56.

"Second Assignment of Error:

"A party is excused from performing under a contract where the other party to the contract breaches or repudiates the agreement.

"Third Assignment of Error:

"Summary judgment is proper when the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.

"Fourth Assignment of Error:

"Contractual provisions attempting to preclude recovery of consequential damages are unenforceable when the clauses are in the same type point as other

document terms and when the provisions are not otherwise set apart or distinct from the other clauses in a contract."

The undisputed facts of this case are as follows. Appellant is a trucking and material supply company located in Sylvania, Ohio. As an essential part of its operation, Sylvester brokers construction aggregates, stone, limestone, sand and gravel. In 1988, appellant submitted a bid for the job of supplying aggregate materials for a resurfacing project on Interstate 75 in Monroe, Michigan and recycling the old concrete roadbed. Appellant was awarded the contract in the spring of 1989. The project was set to begin in June 1989; however, in order to process the existing concrete appellant needed new equipment. Appellant therefore contacted Jay Mertz, a manufacturers' representative, about purchasing a crushing plant. Mertz then contacted Nordberg which, on March 29, 1989, submitted a quotation for a Nordberg Model P5202 Portable Omnicone Crushing Plant. The quotation consisted of ten pages with the quotation text on the front of each page and identical language covering the conditions of sale on the back of each page. Included in the conditions of sale were the following statements:

"PRODUCT WARRANTIES: Product warranties applicable to Nordberg products offered for sale or sold by Nordberg, are communicated by way of Warranty Statements made available by Nordberg upon request or as a supplement to Nordberg's order acknowledgement.

"LIABILITY LIMITATIONS: Under no circumstances shall Nordberg be liable for consequential damages of any nature (whether based on contract or tort) including, but not limited to, loss of profits, loss of production, delays or expense, and the liability of Nordberg shall not, under any other circumstance, exceed the purchase price of the products furnished."

In addition, the text of the quotation provides as follows:

"We are pleased to attach a copy of our 'Extended Warranty' policy. It provides greater coverage against material defects and poor workmanship. To activate the warranty, we include the assistance of a Service Superintendent for up to two days, for proper start-up checklist completion. Should you require our Service Superintendent for a longer period, this will be charged at $65.00 per hour plus expenses.

"Nordberg Warranties apply only to Nordberg manufactured products. Those parts that are supplied by other manufacturers (i.e., motors, engines, starters, etc.) are covered only to the extent of any warranty granted by the specific supplier/manufacturer."

Thereafter, on April 8, 1989, Richard Stansley, Jr., then the vice president of Sylvester, entered into an equipment purchase agreement with Nordberg for a total contract price of $324,425. On the reverse side of the agreement were the

same product warranties and liability limitations statements quoted above.  Subsequently, on April 24, 1989, Nordberg sent Sylvester an order acknowledgement letter which included the "Extended Warranty" certificate.  The letter restated that the warranty only applied to Nordberg manufactured products and the warranty certificate stated the express terms of the warranty.  The express terms of the warranty are in pertinent part as follows:

"WARRANTY: * * *

"Upon satisfactory proof of .claim, Nordberg will, within a reasonable time, make any necessary repairs, additions or corrections, or at the option of Nordberg, supply replacement parts free of charge.  Purchaser labor costs or other charges for correcting defects or making additions will not be allowed, nor will Nordberg accept products returned for credit unless the return or correction is authorized by Nordberg in writing.  THE FOREGOING IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY WARRANTIES THAT EXTEND BEYOND THE DESCRIPTION OF THE PRODUCTS.  This warranty statement (together with the LIABILITY LIMITATIONS stated herein) sets forth the extent of the liability of Nordberg for breach of any warranty or deficiency in connection with the sale or use of Nordberg products.

"LIMITATIONS OF LIABILITY:  Nordberg shall not be liable for any incidental or consequential damages * * *.

"THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES (EXCEPT FOR TITLE), EXPRESSED OR IMPLIED INCLUDING WARRANTY OF MERCHANTABILITY AND OF FITNESS FOR PARTICULAR PURPOSE."

The parties then entered into a second equipment purchase agreement through which Sylvester purchased three material conveyors for $55,000.  The crusher and conveyors were subsequently delivered to the I–75 site where Sylvester and electricians hired by Sylvester assembled it.

On June 27, 1989, William Rude, a service superintendent for Nordberg, arrived at the I–75 site to conduct the start-up checklist.  Despite a few initial problems, by the end of the day on June 29, the crusher was up and running properly.  That night however, the crusher began experiencing problems.  The next day, Rude returned to the site and detected a faulty valve.  As a result, Nordberg replaced the valve at no charge to appellant.  Thereafter, the crusher appeared to be working properly.  Approximately two weeks later, however, appellant began experiencing shut-down problems with the crusher.  Appellant then hired an electrician who replaced a six-amp fuse with a thirty-amp fuse.  Thereafter, the shut-downs began occurring more regularly and Nordberg sent in

its own electricians to examine the problem on or about July 24, 1989. These electricians detected an improperly mounted interlock. After removing and properly mounting the interlock, the shut-down problems ceased.

Despite its ultimate satisfaction with the crusher, appellant refused to pay the remaining $30,516.15 it owed appellee on its account. Appellant submitted to appellee that it was entitled to a setoff for the expenses incurred in correcting the problems with the crusher. On November 12, 1992, Nordberg filed a complaint for the collection of the remainder due on appellant's account. Subsequently, appellant filed a counterclaim asserting various breach of contract and warranty theories, negligent misrepresentation, and negligent design, manufacture, inspection, set-up and repair. Thereafter, appellee filed a motion for summary judgment on its complaint and on appellant's counterclaims. Appellant responded by filing a cross-motion for partial summary judgment on the issue of liability on the breach of contract claims in its counterclaim. In support of the motions, eight depositions and three affidavits along with the exhibits attached thereto were filed with the court. On March 9, 1994, the trial court filed its judgment entry granting appellee a judgment of $30,204.84, plus interest through November 6, 1992, plus interest at two percent from November 7, 1992 to the date of the judgment and reasonable attorney fees to be determined at a future hearing. Thereafter, on April 29, 1992, the court filed a judgment entry *nunc pro tunc* to correct the amount of the judgment to be $30,516.15 plus interest as stated. Then, on May 6, 1992 the court filed its final judgment entry, granting judgment, plus interest and attorney fees in favor of appellee. It is from that judgment that appellant appeals.

In each of its assignments of error, appellant asserts that the trial court erred in granting appellee summary judgment. In reviewing a ruling on a summary judgment motion, we are guided by the standards set forth in Civ.R. 56(C):

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Moreover, "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of

production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

In its first assignment of error, appellant contends that the trial court erred in granting appellee summary judgment because appellee did not prove the amount due on the account by sworn testimony. In support of its motion for summary judgment, appellee relied on the deposition of Richard B. Stansley, Jr. Exhibit F to that deposition is a copy of a Nordberg invoice which lists the amount due on the account as $30,516.15. In regard to that exhibit, appellee's counsel questioned Stansley in the deposition as follows:

"Q. Absent again any offsets that—

"A. Right.

"Q. —that Sylvester may be climbing [*sic*], to the best of your knowledge, what remains due and owing on the principal balance on the purchased equipment?

"MR. PARKER: Note my objection to the extent it may call for a legal conclusion, but you can answer.

"MR. STANSLEY: I don't, I would assume that that's close, I mean I think it is.

"BY MR. MCCUE:

"Q. Around 30,000?

"A. Right, around 30,000."

In addition, two letters attached as exhibits to the deposition of Robert N. Syljebeck, the district sales manager for Nordberg, also refer to the amount due as $30,516.15. Finally, the same invoice referenced above is attached to appellee's complaint. Except for claiming that it was due a setoff, appellant below never submitted evidence to establish that the amount due on the account was not $30,516.15. Civ.R. 56(E) provides in relevant part:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The evidence and arguments submitted by appellant below in response to appellee's motion for summary judgment all go to issues which are essentially affirmative defenses to appellee's claim on the account. They do not challenge the accuracy of the amount due. Accordingly, the trial court did not err in

granting appellee summary judgment on its complaint, and the first assignment of error is not well taken.

The second, third and fourth assignments of error all challenge the trial court's grant of summary judgment to appellee on appellant's breach of contract and warranties claims, and will therefore be discussed together. Appellant contends that the warranty clauses on the contract were not conspicuous and that, even if they were, the court erred in granting appellee summary judgment on counts one, two and three of the counterclaim because appellee breached the contract by failing to honor appellant's valid warranty claims.

■■■ Warranties on the sale of goods in Ohio can be both express and implied. R.C. 1302.26, 1302.27 and 1302.28. Express warranties require for their creation some affirmation or promise on the part of the seller, R.C. 1302.26, while the implied warranties of merchantability and fitness for a particular purpose are assumed in the sale of goods. R.C. 1302.27 and 1302.28. Implied warranties, however, can be excluded from a contract for the sale of goods when the provisions of R.C. 1302.29 are followed. R.C. 1302.29(B) reads:

"Subject to division (C) of this section, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states for example, that 'There are no warranties which extend beyond the description on the face hereof.'"

The term "conspicuous" is defined in R.C. 1301.01(J) as follows:

"A term or clause is 'conspicuous' when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is 'conspicuous.' Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. In a telegram, any stated term is 'conspicuous.' Whether a term or clause is 'conspicuous' is for decision by the court."

■■ In its ruling below, the trial court determined that the warranty was in understandable and conspicuous language, was expressly limited to the repair of the machine or the replacement of parts, and specifically excluded the implied warranties of merchantability and fitness for a particular purpose. We find this conclusion amply supported by the agreement of the parties as quoted above.

■■ Appellee asserts that because the warranty was on the back side of the warranty certificate, was not in a typeface or type style different from other language in the warranty and because the contractual provisions were not

explained to representatives of Sylvester, the trial court erred in finding the warranty clauses to be conspicuous. We disagree. The warranty certificate which lists the terms of the warranty is a one-page, two-sided document. The front page looks like a certificate and simply states "WARRANTY Issued To: Sylvester Materials Covering the Material and Workmanship on the Following Machine:." It then lists the machine, its serial number, the customer site and the shipping date, and is signed by James Konieczka of Nordberg. The back side of the warranty contains all of the terms of the warranty, including, in capital letters, the language quoted above. We, therefore, conclude that the trial court did not err in finding that the warranty language, including the language excluding implied warranties and limiting Nordberg's liability, was conspicuous. As such, the parties were bound by the warranty as expressed in their contract.

■ Appellant further argues that the trial court erred in granting appellee summary judgment because appellee breached the contract by failing to honor valid warranty claims and because appellant sought the costs of repair or replacement of defective parts, not just consequential damages. Appellant supports its argument with the deposition of Robert Syljebeck, a district sales manager for Nordberg, who testified that he believed that appellant had some valid warranty claims. However, as appellee points out, Syljebeck further testified that he is not involved in the decisionmaking process as to whether a warranty claim is valid. Rather, he is involved in the business side of Nordberg and is only involved in warranty issues when the company makes a business, as opposed to warranty, decision to provide coverage to a customer. In addition, appellant submitted the deposition and affidavit of Duane Nowak, the manager of product service support for Nordberg. Nowak is in charge of determining whether warranty claims are valid and asserted in his affidavit that any and all claims by appellant for repair or replacement of Nordberg parts were satisfied pursuant to the terms of the warranty. Finally, Jeffrey Stansley, who oversaw the I–75 project for Sylvester, testified that since the interlock was replaced, the crusher has operated properly. It is undisputed that the parts used to fix the problems with the crusher were replaced by Nordberg free of charge pursuant to the warranty. Only the labor was not covered. However, under the express terms of the warranty, labor is not covered by the warranty. Accordingly, there was no evidence before the lower court that appellee breached the contract by failing to abide by the warranty, and the trial court did not err in granting summary judgment in favor of appellee on counts one, two and three of the counterclaim.

The second, third and fourth assignments of error are, therefore, not well taken.

On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed.   Court costs of this appeal assessed to appellant.

*Judgment affirmed.*

ABOOD, P.J., GLASSER and M.L. RESNICK, JJ., concur.